# UNITED STATES DISTRICT COURT

for the
### Eastern District of Kentucky
### Lexington Division

| | | |
|---|---|---|
| Rebecca Ross | ) | |
| *Plaintiff* | ) | |
| | ) | |
| v. | ) | Case No. |
| | ) | |
| BC Services, Inc. | ) | |
| *Defendant* | ) | |
| Serve: | ) | |
|     J. Boettcher | ) | |
|     550 Disc Drive | ) | |
|     Longmont, CO 80503 | ) | |
| | ) | |
| Ford Motor Credit, LLC | ) | |
| *Defendant* | ) | |
| Serve: | ) | |
|     C T Corporation System | ) | |
|     306 W Main Street, Suite 512 | ) | |
|     Frankfort, KY 40601 | ) | |
| | ) | |
| Pennsylvania Higher Ed. Assistance Agency | ) | |
| d/b/a FedLoan Servicing | ) | |
| *Defendant* | ) | |
| Serve: | ) | |
|     The Corporation Trust Company | ) | |
|     Corporation Trust Center | ) | |
|     1209 Orange Street | ) | |
|     Wilmington, DE 19801 | ) | |
| | ) | |
| Tormey Bewley Corp. | ) | |
| d/b/a The Advantage Group | ) | |
| *Defendant* | ) | |
| Serve: | ) | |
|     Corporation Service Company | ) | |
|     1560 Broadway, Suite 2090 | ) | |
|     Denver, CO 80202 | ) | |
| | ) | |
| | ) | |
| | ) | |

Xerox Education Services, LLC            )
d/b/a ACS Education Services             )
     *Defendant*                              )
Serve:                                   )
     Corporation Service Company       )
     421 West Main Street              )
     Frankfort, KY 40601              )
                               )

## COMPLAINT AND DEMAND FOR JURY TRIAL

### Introduction

1.     This is a complaint for damages for Defendants' violations of the Fair Credit Reporting Act, 15 U.S.C. § 1681 *et seq.* ("FCRA") and the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.* ("FDCPA").

### JURISDICTION AND VENUE

2.     Jurisdiction of this court arises under 15 U.S.C. § 1681p and 15 U.S.C. § 1692k. Venue is proper, because many of the relevant events affected and/or damaged a consumer living within Madison County, Ky., which is located within this District.

### PARTIES

3.     Plaintiff Rebecca Ross is a natural person who resides in Madison County, Ky. Ms. Ross is a "consumer" within the meaning of the FCRA, as defined at 15 U.S.C. § 1681a(c).

4.     Defendant BC Services, Inc. ("BCS") is a Colorado for-profit corporation, with its principal place of business located in Longmont, CO. BCS has not registered with the Kentucky Secretary of State, and is engaged in the business of collecting debts from consumers on the behalf of various medical creditors.

5.     BCS is a "debt collector" as defined by the FDCPA. 15 U.S.C. § 1692a(6). BCS is also a furnisher and user of information within meaning of the FCRA.

6.     Ford Motor Credit, LLC ("FMC") is a foreign limited liability company, with its principal place of business located in Dearborn, MI. FMC has registered with the Kentucky Secretary of State, and is engaged in the business of extending credit for the purchase of Ford motor vehicles to consumers, including Kentucky consumers.

7.     FMC is a furnisher and user of information within meaning of the FCRA.

8.      The Pennsylvania Higher Education Assistance Agency d/b/a FedLoan Servicing ("PHEAA") is foreign corporation, with its principal place of business located in Harrisburg, PA. PHEAA is an inactive corporation in bad standing with the Kentucky Secretary of State.

9.      PHEAA is a furnisher and user of information within meaning of the FCRA.

10.     Defendant, Tormey Bewley Corp. d/b/a The Advantage Group ("Tormey"), is a Colorado for-profit corporation, with its principal place of business located in Denver, CO. Tormey has not registered with the Kentucky Secretary of State, and is engaged in the business of collecting debts from consumers on the behalf of various medical creditors.

11.     Tormey is a "debt collector" as defined by the FDCPA. 15 U.S.C. § 1692a(6). Tormey is also a furnisher and user of information within meaning of the FCRA.

12.     Xerox Education Services, LLC d/b/a ACS Education Services ("Xerox") is foreign corporation, with its principal place of business located in Dallas, TX. Xerox is an inactive corporation in good standing with the Kentucky Secretary of State.

13.     Xerox is a furnisher and user of information within meaning of the FCRA.

## STATEMENT OF FACTS

14.     Ms. Ross and her husband want to buy their own home.

15.     In order to accomplish this goal, the Rosses are keenly aware of the importance of their credit score.

16.     As explained on Bankrate.com, a person's credit score is important to many major life events: including housing, employment, and credit:

> Today's economy runs on credit. If you want to get a mortgage loan for a house or a student loan to pay for college, or if you just want to put your lunch on a credit card, a company is extending credit to you.
>
> Your creditworthiness is defined by your three-digit credit score and is the key to your financial life. Good credit can be the make-or-break detail that determines whether you'll get a mortgage, car loan or student loan. On the other hand, bad credit will make it more difficult for you to get a credit card with a low interest rate and it

> will make it more expensive to borrow money for any purpose, says
> Liz Pulliam Weston, author of "Your Credit Score."
>
> But even if you're not in the market for a loan, good credit can have
> a major impact, Weston says.
>
> "Your credit information can be a factor in whether or not you can
> rent a nice apartment, how much you pay for insurance or whether
> or not you can get a job," she says. Landlords, insurers and
> employers frequently use credit information as a litmus test to see if
> the people they are dealing with are reliable and responsible.
>
> Bad credit can suggest you're a risky bet. While bad credit may only
> show the details of how you deal with debt, some will extrapolate
> the characteristics from your financial life to other situations and
> assume that your bad credit implies that you may be just as
> irresponsible driving a car, taking care of an apartment or showing
> up for a job, Weston notes.
>
> Good credit can signify that your financial situation—and the rest of
> your life—is on the right track.[1]

17.     In an effort to improve their credit scores and credit ratings, the Rosses regularly review their consumer credit reports.

18.     The Rosses recently reviewed their consumer credit reports from the three major consumer reporting agencies ("CRA's"): Equifax Information Services, LLC ("Equifax"), Experian Information Solutions, Inc. ("Experian"), and Trans Union, LLC ("Trans Union").

19.     Ms. Ross discovered incorrect and inaccurate credit information on tradelines furnished by BC Services, Inc., Ford Motor Credit, LLC, Pennsylvania Higher Ed. Assistance Agency d/b/a FedLoan Servicing, Xerox Education Services, LLC d/b/a ACS Education Services, and Tormey Bewley Corp. d/b/a The Advantage Group.

## I.      Facts Relating to Ford Motor Credit, LLC

20.     In 2004, Rebecca Ross took out a closed-end installment loan with Ford Motor Credit, LLC ("FMC") for purposes of financing the purchase of a Ford vehicle.

21.     Ms. Ross paid the FMC installment loan off in full April 2012.

---

[1]   [1] http://www.bankrate.com/finance/credit-cards/why-is-good-credit-so-important.aspx

-4-

22.     Upon review of her credit reports from the CRA's, Ms. Ross discovered that Trans Union was incorrectly and inaccurately reporting that the FMC tradeline was currently 30 days past due, and Equifax was incorrectly and inaccurately reporting that the FMC tradeline was currently 30-59 days past due.

23.     On July 5, 2017, Ms. Ross sent dispute letters to Trans Union and Equifax disputing the current account status of the FMC tradeline each was reporting.

24.     Trans Union and Equifax each had a statutory duty under 15 U.S.C. § 1681i(a)(2) to forward a copy of Ms. Ross's dispute to FMC.

25.     Trans Union and Equifax each sent FMC notice of Ms. Ross's disputes, which thereby triggered FMC's duty under 15 U.S.C. § 1681s-2(b) to reinvestigate the negative information it was furnishing to Trans Union and Equifax concerning Ms. Ross.

26.      FMC failed to conduct a reasonable investigation into Ms. Ross's disputes concerning the current pay status of the installment loan that FMC was furnishing to Trans Union and Equifax.

27.     FMC falsely verified the accuracy of the disputed negative credit information to Trans Union and Equifax.

28.     Trans Union and Equifax each sent Ms. Ross a response to her dispute, in which each stated that FMC had verified the information as correct and that the current status of the debt was being reported correctly.

29.     The current status of the FMC tradeline should be reported as paid and closed.

30.     The reporting of the current status of the FMC installment loan as either 30 days late or 30-59 days late is inaccurate and misleading. Further, the misreporting to the FMC tradeline with a current status of 30 days late or 30-59 days late negatively affects Ms. Ross's credit score and credit rating.[2]

31.     As a result of FMC's failure to conduct a reasonable investigation of Ms. Ross's

_____

[2] MyFICO.com notes that Payment History is the most important factor in determining a person's credit score: accounting for 35% of the score. http://blog.myfico.com/5-factors-determine-fico-score/ (visited Aug. 13, 2017). Further, as to missed payments, the more recent the missed payment, the more negative the effect on a consumer's credit score. http://www.myfico.com/credit-education/credit-payment-history/ (visited Aug. 13, 2017).

dispute, Ms. Ross suffered actual damages in the form of a lowered credit score and denial of credit.

## II. Facts Relating to Pennsylvania Higher Education Assistance Agency d/b/a FedLoan Servicing

32.     Ms. Ross discovered on her Trans Union and Equifax credit reports several tradelines being furnished by the Pennsylvania Higher Education Assistance Agency ("PHEAA") as FedLoan Servicing tradelines in connection with student loan debts.

33.     Ms. Ross discovered that Trans Union was incorrectly and inaccurately reporting that a FedLoan Servicing tradeline was currently 120 days past due, and Equifax was incorrectly and inaccurately reporting that the same FedLoan Servicing tradeline was currently 120 days past due.

34.     On July 5, 2017, Ms. Ross sent dispute letters to Trans Union and Equifax disputing the current account status of the FedLoan Servicing tradeline at issue.

35.     Trans Union and Equifax each had a statutory duty under 15 U.S.C. § 1681i(a)(2) to forward a copy of Ms. Ross's dispute to PHEAA.

36.     Trans Union and Equifax each sent FMC notice of Ms. Ross's disputes, which thereby triggered PHEAA's duty under 15 U.S.C. § 1681s-2(b) to reinvestigate the negative information it was furnishing to Trans Union and Equifax concerning Ms. Ross.

37.     PHEAA failed to conduct a reasonable investigation into Ms. Ross's disputes concerning the current pay status of the student-loan debt that PHEAA was furnishing to Trans Union and Equifax.

38.     PHEAA falsely verified the accuracy of the disputed negative credit information to Trans Union and Equifax.

39.     Trans Union and Equifax each sent Ms. Ross a response to her dispute, in which each CRA stated that PHEAA had verified the information as correct and that the current status of the debt was being reported correctly.

40.     The current status of the FedLoan Servicing tradeline at issue should be reported as closed and transferred.

41.     The reporting of the FedLoan Servicing tradeline as 120 days late is inaccurate and

misleading. Further, the misreporting to the FedLoan Servicing tradeline with a current status of 120 days late negatively affects Ms. Ross's credit score and credit rating.

42.      As a result of PHEAA's failure to conduct a reasonable investigation of Ms. Ross's dispute, Ms. Ross suffered actual damages in the form of a lowered credit score and denial of credit.

### III.     Facts Relating to Xerox Education Services, LLC d/b/a ACS Education Services

43.      Ms. Ross discovered on her Trans Union credit reports several tradelines being furnished by Xerox Education Services, LLC ("Xerox") as "ACS/Wells" tradelines in connection with student loan debts.

44.      The ACS/Wells tradelines refer to education loans originated by Wells Fargo Bank and serviced by Xerox.

45.      Upon review of her credit reports from Trans Union, Ms. Ross discovered that Trans Union was incorrectly and inaccurately reporting that a ACS/Wells tradeline was currently 120 days past due. The ACS/Wells tradeline at issue was closed and transferred.

46.      On July 5, 2017, Ms. Ross sent a dispute letters to Trans Union disputing the current account status of the ACS/Wells tradeline at issue.

47.      Trans Union had a statutory duty under 15 U.S.C. § 1681i(a)(2) to forward a copy of Ms. Ross's dispute to Xerox.

48.      Trans Union sent Xerox notice of Ms. Ross's dispute, which thereby triggered Xerox's duty under 15 U.S.C. § 1681s-2(b) to reinvestigate the negative information it was furnishing to Trans Union concerning Ms. Ross.

49.      Xerox failed to conduct a reasonable investigation into Ms. Ross's disputes concerning the current pay status of the student-loan debt that Xerox was furnishing to Trans Union.

50.      Xerox falsely verified the accuracy of the disputed negative credit information to Trans Union.

51.      Trans Union sent Ms. Ross a response to her dispute, in which Trans Union stated that ACS/Wells had verified the information as correct and that the current status of the debt was

being reported correctly.

52.     The current status of the ACS/Wells tradeline at issue should be reported as closed and transferred or should not be reported at all.

53.     The reporting that the current status of the ACS/Wells tradeline as 120 days late is inaccurate and misleading. Further, the misreporting to the ACS/Wells tradeline with a current status of 120 days late negatively affects Ms. Ross's credit score and credit rating.

54.     As a result of Xerox's failure to conduct a reasonable investigation of Ms. Ross's dispute, Ms. Ross suffered actual damages in the form of a lowered credit score and denial of credit.

## IV.    Facts Relating to BC Services, Inc.

55.     Upon review of her credit reports, Ms. Ross discovered a tradeline for a medical debt furnished by BC Services, Inc. ("BCS").

56.     Ms. Ross does not recognize this debt and does not believe it is her debt.

57.     The BCS medical debt may be a debt incurred by her husband.

58.     Upon information and belief, the BCS medical debt was incurred for personal, family, or household purposes, which makes the BCS medical debt a "debt" within the meaning of the FDCPA.

59.     Ms. Ross sent dispute letter to all three CRAs disputing the BCS medical debt on grounds that it was not her debt.

60.     The CRAs had a statutory duty under 15 U.S.C. § 1681i(a)(2) to forward a copy of Ms. Ross's dispute to BCS.

61.     The CRAs sent BCS notice of Ms. Ross's dispute, which thereby triggered BCS's duty under 15 U.S.C. § 1681s-2(b) to reinvestigate the negative information it was furnishing to the CRA's concerning Ms. Ross.

62.     BCS failed to conduct a reasonable investigation into Ms. Ross's disputes concerning the Ms. Ross's liability for the medical debt that BCS was furnishing to one or more CRAs.

63.     BCS falsely verified the accuracy of the disputed negative credit information at issue to one or more CRAs.

64.     One or more CRAs sent Ms. Ross a response to her dispute, in which the CRAs stated that BCS had verified the information as correct and that she was in fact liable for the debt at issue.

65.     The BCS medical debt should not be reported at all on Ms. Ross's credit report because the debt is not hers and she is not responsible for payment of the debt.

66.     The false and inaccurate reporting of the BCS medical debt on Ms. Ross's credit report negatively affects Ms. Ross's credit score and credit rating.

67.     As a result of BCS's failure to conduct a reasonable investigation of Ms. Ross's dispute, Ms. Ross suffered actual damages in the form of a lowered credit score and denial of credit.

## V.      Facts Relating to Tormey Bewley Corp. d/b/a The Advantage Group

68.     Upon review of her credit reports, Ms. Ross discovered a tradeline on her credit report furnished by The Advantage Group, which is an assumed or fictitious name for Tormey Bewley Corp. ("Tormey").

69.     The Advantage Group tradeline was included in the collection section of one or more of her credit reports, which was furnished for purposes of collecting a medical debt from Mr. Ross. *Sullivan v. Equifax, Inc.*, CIV.A. 01-4336, 2002 WL 799856 (E.D. Pa. Apr. 19, 2002) ("[R]eporting a debt to a credit reporting agency is 'a powerful tool designed, in part, to wrench compliance with payment terms.'").

70.     The Advantage Group medical tradeline concerns a medical debt incurred for personal, family, or household purposes, which makes The Advantage Group medical debt a "debt" within the meaning of the FDCPA.

71.     Tormey unlawfully increased the balance due on The Advantage Group medical debt from $190 to $207.

72.     Tormey increased the balance due on The Advantage Group medical debt by adding prejudgment interest and fees that Tormey had no legal right to extrajudicially award itself. *Fulk*

*v. LVNV Funding LLC*, 55 F. Supp. 3d 967, 973 (E.D. Ky. 2014) (ruling that "a creditor may not collect prejudgment interest from a debtor until a judgment has been awarded").

## CLAIMS FOR RELIEF

**I.      Claims against Ford Motor Credit, LLC**

73.      Ford Motor Credit, LLC ("FMC") violated 15 U.S.C. § 1681s-2(b). After being informed by Trans Union and Equifax that Ms. Ross disputed the accuracy of the information FMC was providing concerning Ms. Ross and the current status of the FMC installment loan, FMC willfully failed to conduct a proper investigation of Ms. Ross' disputes filed with Trans Union and Equifax that FMC was furnishing false negative credit information about Ms. Ross and the current status of the FMC installment loan.

74.      FMC willfully failed to review all relevant information purportedly provided by Trans Union and Equifax to FMC in conducting its investigation, as required by 15 U.S.C. §1681s-2(b)(B).

75.      FMC willfully failed to direct Trans Union and Equifax to delete inaccurate information about Ms. Ross pertaining to the current status of the FMC installment loan as required by 15 U.S.C. §1681s-2(b)(C).

76.      As a result of FMC's failure to conduct a reasonable investigation of Ms. Ross's dispute, Ms. Ross suffered actual damages in the form of a lowered credit score and denial of credit. She also suffered frustration, irritation, and emotional upset and distress

77.      Ms. Ross has a private right of action to assert claims against FMC arising under 15 U.S.C. §1681s-2(b).

78.      FMC is liable to Ms. Ross for the actual damages she has sustained by reason of its violations of the FCRA, in an amount to be determined by the trier of fact, or up to $1,000.00 in statutory damages whichever is greater, together with an award of punitive damages in an amount to be determined by the trier of fact, as well as her reasonable attorney's fees, and she may recover therefore pursuant to 15 U.S.C. §1681n.

79.      In the alternative, FMC's conduct, actions and inactions were negligent rendering FMC liable under 15 U.S.C. § 1681o for actual damages, along with attorney's fees and costs.

## II.     Claims against Pennsylvania Higher Education Assistance Agency d/b/a FedLoan Servicing

80.     Pennsylvania Higher Education Assistance Agency d/b/a FedLoan Servicing ("PHEAA") violated 15 U.S.C. § 1681s-2(b). After being informed by Trans Union and Equifax that Ms. Ross disputed the accuracy of the information PHEAA was providing concerning Ms. Ross and the current status of the PHEAA installment loan, PHEAA willfully failed to conduct a proper investigation of Ms. Ross' disputes filed with Trans Union and Equifax that PHEAA was furnishing false negative credit information about Ms. Ross and the current status of the FedLoan Servicing student loan account.

81.     PHEAA willfully failed to review all relevant information purportedly provided by Trans Union and Equifax to PHEAA in conducting its investigation, as required by 15 U.S.C. §1681s-2(b)(B).

82.     PHEAA willfully failed to direct Trans Union and Equifax to delete inaccurate information about Ms. Ross pertaining to the current status of the FedLoan Servicing student loan account as required by 15 U.S.C. §1681s-2(b)(C).

83.     As a result of PHEAA's failure to conduct a reasonable investigation of Ms. Ross's dispute, Ms. Ross suffered actual damages in the form of a lowered credit score and denial of credit. She also suffered frustration, irritation, and emotional upset and distress

84.     Ms. Ross has a private right of action to assert claims against PHEAA arising under 15 U.S.C. §1681s-2(b).

85.     PHEAA is liable to Ms. Ross for the actual damages she has sustained by reason of its violations of the FCRA, in an amount to be determined by the trier of fact, or up to $1,000.00 in statutory damages whichever is greater, together with an award of punitive damages in an amount to be determined by the trier of fact, as well as her reasonable attorney's fees, and she may recover therefore pursuant to 15 U.S.C. §1681n.

86.     In the alternative, PHEAA's conduct, actions and inactions were negligent rendering PHEAA liable under 15 U.S.C. § 1681o for actual damages, along with attorney's fees and costs.

## III.     Claims against Xerox Education Services, LLC d/b/a ACS Education Services

87.     Xerox Education Services, LLC d/b/a ACS Education Services ("ACS") violated 15 U.S.C. § 1681s-2(b). After being informed by Trans Union and Equifax that Ms. Ross disputed

the accuracy of the information Xerox was providing concerning Ms. Ross and the current status of the ACS/Wells installment loan, Xerox willfully failed to conduct a proper investigation of Ms. Ross' disputes filed with Trans Union and Equifax that Xerox was furnishing false negative credit information about Ms. Ross and the current status of the ACS/Wells student loan account.

88.    Xerox willfully failed to review all relevant information purportedly provided by Trans Union and Equifax to Xerox in conducting its investigation, as required by 15 U.S.C. §1681s-2(b)(B).

89.    Xerox willfully failed to direct Trans Union and Equifax to delete inaccurate information about Ms. Ross pertaining to the current status of the ACS/Wells student loan account as required by 15 U.S.C. §1681s-2(b)(C).

90.    As a result of Xerox's failure to conduct a reasonable investigation of Ms. Ross's dispute, Ms. Ross suffered actual damages in the form of a lowered credit score and denial of credit. She also suffered frustration, irritation, and emotional upset and distress

91.    Ms. Ross has a private right of action to assert claims against Xerox arising under 15 U.S.C. §1681s-2(b).

92.    Xerox is liable to Ms. Ross for the actual damages she has sustained by reason of its violations of the FCRA, in an amount to be determined by the trier of fact, or up to $1,000.00 in statutory damages whichever is greater, together with an award of punitive damages in an amount to be determined by the trier of fact, as well as her reasonable attorney's fees, and she may recover therefore pursuant to 15 U.S.C. §1681n.

93.    In the alternative, Xerox's conduct, actions and inactions were negligent rendering Xerox liable under 15 U.S.C. § 1681o for actual damages, along with attorney's fees and costs.

## IV.    Claims against BC Services, Inc.

### A.    Violations of the FDCPA

94.    BC Services, Inc. ("BCS") violated the FDCPA by attempting to collect a debt from Ms. Ross that she does not owe, by misrepresenting the legal status of a debt, and by publishing false credit information concerning Ms. Ross and a debt she does not owe.

95.    BCS's violations of the FDCPA include violations of 15 U.S.C. § 1692f, 15 U.S.C. § 1692e and one or more subsections of each statute.

**B.     Violations of the FCRA**

96.     BCS violated 15 U.S.C. § 1681s-2(b). After being informed by Trans Union and Equifax that Ms. Ross disputed the accuracy of the information BCS was providing concerning Ms. Ross and her liability for the BCS medical debt, BCS willfully failed to conduct a proper investigation of Ms. Ross' disputes filed with Trans Union and Equifax that BCS was furnishing false negative credit information about Ms. Ross and BCS medical debt.

97.     BCS willfully failed to review all relevant information purportedly provided by Trans Union and Equifax to BCS in conducting its investigation, as required by 15 U.S.C. §1681s-2(b)(B).

98.     BCS willfully failed to direct Trans Union and Equifax to delete inaccurate information about Ms. Ross pertaining to the Ms. Ross's lack of responsibility for payment of the BCS medical debt as required by 15 U.S.C. §1681s-2(b)(C).

99.     As a result of BCS's failure to conduct a reasonable investigation of Ms. Ross' dispute, Ms. Ross suffered actual damages in the form of a lowered credit score and denial of credit. She also suffered frustration, irritation, and emotional upset and distress

100.    Ms. Ross has a private right of action to assert claims against BCS arising under 15 U.S.C. §1681s-2(b).

101.    BCS is liable to Ms. Ross for the actual damages she has sustained by reason of its violations of the FCRA, in an amount to be determined by the trier of fact, or up to $1,000.00 in statutory damages whichever is greater, together with an award of punitive damages in an amount to be determined by the trier of fact, as well as her reasonable attorney's fees, and she may recover therefore pursuant to 15 U.S.C. §1681n.

102.    In the alternative, BCS's conduct, actions and inactions were negligent rendering BCS liable under 15 U.S.C. § 1681o for actual damages, along with attorney's fees and costs.

**V.     Claims against Tormey Bewley Corp. d/b/a The Advantage Group**

**A.     Violations of the FDCPA**

103.    Tormey Bewley, LLC d/b/a The Advantage Group ("Tormey") attempted to collect interest and fees from Ms. Ross that it had no extrajudicial right to collect from her.

-13-

104.    Tormey misrepresented the amount of Ms. Ross's debt by including fees and interest it had no legal right to recover from her in the amount to the Tormey collection account it furnished to one or more CRAs.

105.    Tormey furnished false credit information to one or more CRAs concerning Ms. Ross and the Tormey collection account.

106.    The foregoing acts by Tormey violate the FDCPA, including 15 U.S.C. § 1692e and 15 U.S.C. § 1692f and one or more subsections of each statute.

**B.    Violations of the FCRA**

107.    Tormey violated 15 U.S.C. § 1681s-2(b). After being informed by the CRA's that Ms. Ross disputed the accuracy of the information Tormey was providing concerning Ms. Ross and the amount of the Tormey collection account, Tormey willfully failed to conduct a proper investigation of Ms. Ross' disputes filed with the CRAs that Tormey was furnishing false negative credit information about Ms. Ross and Tormey collection account.

108.    Tormey willfully failed to review all relevant information purportedly provided by the CRAs to Tormey in conducting its investigation, as required by 15 U.S.C. §1681s-2(b)(B).

109.    Tormey willfully failed to direct the CRAs to delete inaccurate information about Ms. Ross pertaining to the amount of the Tormey collection account as required by 15 U.S.C. §1681s-2(b)(C).

110.    As a result of Tormey's failure to conduct a reasonable investigation of Ms. Ross's dispute, Ms. Ross suffered actual damages in the form of a lowered credit score and denial of credit. She also suffered frustration, irritation, and emotional upset and distress

111.    Ms. Ross has a private right of action to assert claims against Tormey arising under 15 U.S.C. §1681s-2(b).

112.    Tormey is liable to Ms. Ross for the actual damages she has sustained by reason of its violations of the FCRA, in an amount to be determined by the trier of fact, or up to $1,000.00 in statutory damages whichever is greater, together with an award of punitive damages in an amount to be determined by the trier of fact, as well as her reasonable attorney's fees, and she may recover therefore pursuant to 15 U.S.C. §1681n.

113.    In the alternative, Tormey's conduct, actions and inactions were negligent rendering Tormey liable under 15 U.S.C. § 1681o for actual damages, along with attorney's fees and costs.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff Rebecca Ross requests that the Court grant her the following relief:

1.      Award Plaintiff the maximum amount of statutory damages against each Defendant under the FCRA, 15 U.S.C. §1681n;

2.      Award Plaintiff the maximum amount of statutory damages against Defendants BC Services, Inc. and Tormey Bewley Corp. d/b/a The Advantage Group under the FDCPA, 15 U.S.C. §1692k;

3.      Award Plaintiff actual damages against all Defendants under the FCRA, 15 U.S.C. §1681n or, in the alternative, under 15 U.S.C. § 1681o;

4.      Award Plaintiff actual damages against Defendants BC Services, Inc. and Tormey Bewley Corp. d/b/a The Advantage Group under the FDCPA, 15 U.S.C. §1692k;

5.      Award Plaintiff punitive damages against all Defendants under the FCRA, 15 U.S.C. §1681n;

6.      Award Plaintiff Attorney's fees, litigation expenses and costs under the FCRA and FDCPA;

7.      A trial by jury; and

8.      Any other relief to which Plaintiff may be entitled.


Respectfully submitted,

/s/ James R. McKenzie
**James R. McKenzie**
**J. Hays Lawson**
*Credit Defense Attorneys, PLLC*
115 S. Sherrin Avenue, Suite 4
Louisville, KY 40207
Tel:     (502) 371-2179
Fax:     (502) 257-7309
james@creditdefenseky.com
hays@creditdefenseky.com